IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EDDIE RICHARD FELDER,          §
TDCJ-CID NO. 1210034,          §
                               §
          Petitioner,          §
                               §
v.                             §
                               §     CIVIL ACTION NO. H-06-0794
NATHANIEL QUARTERMAN, Director, §
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
          Respondent.          §

## MEMORANDUM OPINION AND ORDER

Eddie Richard Felder, proceeding pro se, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 (Docket Entry No. 1) with Brief in Support (Docket Entry No. 3) challenging his state court conviction. See 28 U.S.C. § 2254 (2000).   Pending before the court are Respondent Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 15) and Petitioner Felder's Objections to the Respondent's Motion for Summary Judgment (Docket Entry No. 16). For the reasons discussed below, the court will grant respondent's motion for summary judgment and deny Felder's petition for a writ of habeas corpus.

## I.  Procedural History and Claims

Felder was indicted by a grand jury for possession of a controlled substance with intent to deliver, enhanced by two prior

felony convictions.  <u>Ex parte Felder</u>, No. 62,381-01, at 192.  A
jury convicted Felder in the 248th District Court of Harris County,
Texas, on January 4, 2002, and assessed punishment of fifty years'
imprisonment in the Texas Department of Criminal Justice,
Correctional Institutions Division ("TDCJ-CID").  <u>Id.</u> at 200.  **The
Court of Appeals modified the trial court's judgment, but affirmed
the conviction on January 23, 2003.**  <u>Felder v. State</u>**,** No. 01-02-
00131-CR (Tex. App. -- Houston [1st Dist.] January 23, 2003, pet.
ref'd) (not designated for publication).  The Texas Court of
Criminal Appeals refused Felder's petition for discretionary review
on June 11, 2003.  Felder did not seek certiorari in the
United States Supreme Court.

Felder collaterally challenged his conviction by filing a
state habeas application on August 6, 2004.  <u>Ex parte Felder</u>,
No. 62,381-01, at 2.  The Texas Court of Criminal Appeals denied
the application without written order on the findings of fact of
the trial court and without a hearing on February 1, 2006.  <u>Id.</u> at
cover.

Felder filed this petition for a writ of habeas corpus on
February 2, 2006 (Docket Entry No. 1 at 9).[1]  The court understands
his petition to assert the following grounds for relief:

---

[1]"[T]he habeas corpus petition of a pro se prisoner litigant
is filed for purposes of determining the applicability of the AEDPA
at the time the petitioner tenders the petition to prison officials
for mailing."  <u>Spotville v. Cain</u>, 149 F.3d 374, 375 (5th Cir.
1998).  Felder declares that he placed the petition in the prison
mailing system on February 28, 2006 (Docket Entry No. 1 at 9).
Therefore, the court considers the petition filed on this date.

1. his right to a speedy trial under the Interstate Agreement on Detainers Act and the Sixth Amendment were violated;[2]

2. the trial court allowed inadmissible expert testimony regarding the composition and weight of the substance found in his possession;

3. the evidence presented in his trial was insufficient to support the conviction;

4. his right to an impartial jury under the Sixth Amendment was violated because one of the jurors was biased;

5. he was denied effective assistance of trial counsel because counsel

   a. disclosed to the venire members during voir dire that Felder had been previously convicted of other crimes;

   b. failed to investigate the potential testimony of a second police officer who was present at the scene during Felder's arrest;

   c. failed to request an independent examination of the substance found on Felder's person at the time of his arrest; and

   d. agreed to trial date resets without informing him or obtaining his consent.

(Docket Entry No. 1 at 7-8; Docket Entry No. 3 at 13-42)

Because Felder was convicted and sentenced in Harris County, Texas, this court has jurisdiction over Felder's petition pursuant to 28 U.S.C. § 2241(d).  See 28 U.S.C. § 2241(d) (2000); Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

---

[2]While he was released on bond pending resolution of his indictment for possession of a controlled substance, Felder was arrested and charged with a federal firearms offense (Docket Entry No. 3 at 2).  Felder pleaded guilty, and was serving time in federal prison as he awaited his trial on the state charge.

## II.  <u>Standard of Review</u>

**A.  Summary Judgment**

A court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are facts that may "affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

The party moving for summary judgment bears the initial burden of proving the absence of any genuine issues of material fact. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). Once the movant has met this burden, the non-movant must establish that there is a genuine issue for trial. <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911 (5th Cir. 1998). If the non-movant is unable to meet this burden, the motion for summary judgment will be granted. Fed. R. Civ. P. 56(c). When considering a summary judgment motion, the court resolves any doubts and draws any inferences in favor of the nonmoving party. <u>Hunt v. Cromartie</u>, 119 S. Ct. 1545, 1551-52 (1999).

**B.    AEDPA**

Felder's petition is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because it was filed after the AEDPA's effective date of April 24, 1996.  <u>See</u> 28 U.S.C. § 2254; <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2063 (1997).

The provisions of section 2254(d) set forth "a highly deferential standard for evaluating state-court rulings." <u>Lindh</u>, 117 S. Ct. at 2066 n.7.  A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court decision

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[P]ure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)." <u>Martin v. Cain</u>, 246 F.3d 471, 475-476 (5th Cir. 2001) (quoting <u>Corwin v. Johnson</u>, 150 F.3d 467, 471 (5th Cir. 1998)).

A state court's legal determination is contrary to the established precedent of the Supreme Court only when "the state court decides a case differently than the Supreme Court has on a

set of materially indistinguishable facts." <u>Chambers v. Johnson</u>, 218 F.3d 360, 363 (5th Cir. 2000) (quoting <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1523 (2000)).  A writ of habeas corpus will issue based on an unreasonable application of federal law only if the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 120 S. Ct. at 1523.

In reviewing a federal habeas petition of a person in state custody, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### III.  <u>Analysis</u>

**A.  Denial of Speedy Trial**

1.  <u>Interstate Agreement on Detainers</u>

Felder asserts that his right to a speedy trial under the Interstate Agreement on Detainers ("IAD") was violated (Docket Entry No. 1 at 7; Docket Entry No. 3 at 13-21).  Specifically, he claims that his trial was not commenced within 180 days after he requested a final disposition of his indictment as required by Article III(a) of the IAD.  <u>See</u> Tex. Code Crim. Proc. Ann. art. 51.14 (Vernon 1979); 18 U.S.C. App. 2 § 2.  Alternatively, he contends that his trial was not commenced within 120 days of his arrival into Texas custody as required by Article IV(c) of the IAD.

-6-

See id.  Respondent argues that Felder waived his right to trial within the time limits specified by the IAD when his counsel agreed to a trial date outside the time period required by Article III or IV of the IAD (Docket Entry No. 15 at 5).

Forty-eight states, the United States, and the District of Columbia entered into the IAD to establish procedures to resolve any outstanding charges one member state may have against a prisoner held by another member state.  New York v. Hill, 120 S. Ct. 659, 662 (2000).  Because the IAD is an interstate compact sanctioned by Congress under the Compact Clause of Article I, section 10, clause 3 of the United States Constitution, it "is a federal law subject to federal construction."  Id. (citing Carchman v. Nash, 105 S. Ct. 3401, 3403 (1985); Cuyler v. Adams, 101 S. Ct. 703, 706-08 (1981)).

A state seeking to bring charges against a prisoner held by another state initiates the process by filing a detainer, which is a request that the institution housing the prisoner notify the state seeking to bring charges when the prisoner's release is imminent or that the institution hold the prisoner until the charging state can take custody of him.  Id. (citing Fex v. Michigan, 113 S. Ct. 1085, 1087 (1993)).  After a detainer is filed, the prisoner may request that a final disposition be made in his case.  Article III(a).  If the prisoner makes such a request, the charging state must bring the prisoner to trial within 180

-7-

days, "provided that for good cause shown in open court, the
prisoner or his counsel being present, the court having
jurisdiction of the matter may grant any necessary or reasonable
continuance." Id. The charging state may also initiate resolution
of the charges by requesting temporary custody of the prisoner for
that purpose. Article IV(a). In that case, the trial must be
initiated "within 120 days of the arrival of the prisoner in the
receiving state." Article IV(c). This 120-day period is similarly
subject to reasonable and necessary continuances. Id. If the
trial is not initiated within the specified 120-day or 180-day time
period, the indictment against the prisoner must be dismissed with
prejudice. Article V(c).

Felder contends that he initiated the 180-day time period
pursuant to Article III(a) with his Motion for a Speedy Disposition
filed on March 29, 2001 (Docket Entry No. 3 at 16; see C.R. at 60).
Respondent argues that this motion did not contain all of the
information required by Article III(a), and thus did not invoke the
180-day time limit (Docket Entry No. 15 at 5). The court need not
decide, however, whether Felder's March 29, 2001, motion initiated
the 180-day time limit. On March 23, 2001, the Assistant District
Attorney for Harris County and the presiding judge for the 248th
District Court of Harris County requested temporary custody of
Felder to resolve the charges pending against him pursuant to
Article IV(a) (7 R.R. [Reporter's Record] at Def.'s Ex. 1).

-8-

Accordingly, Felder was transferred from federal custody to the
Harris County Jail on or about June 23, 2001 (2 R.R. at 5).  If
Felder's March 29, 2001, motion initiated Article III's 180-day
time limit, his trial would have been required to begin no later
than September 25, 2001.  On the other hand, if Felder's transfer
to Texas custody on June 23, 2001, initiated Article IV's 120-day
time limit, his trial would have been required to begin no later
than October 21, 2001.  It is undisputed and the record reflects
that Felder's trial did not begin until January 3, 2002 (4 R.R. at
1).  Thus, Felder's trial did not begin within either of the IAD's
potentially applicable time limits.

Felder raised this claim in his state habeas petition.
Ex parte Felder, No. 62,381-01, at 6.  The Texas Court of Criminal
Appeals denied the claim without written order, adopting the trial
court's findings that the claim need not be considered because it
had already been evaluated and rejected on direct appeal.  Id. at
cover, 173.  On direct appeal the Court of Appeals for the First
District of Texas rejected this claim finding that Felder waived
the issue by agreeing, through his trial counsel, to multiple trial
date resets without requesting hearings "in open court to establish
good cause" or that the trial court expressly approve the resets.
Felder v. State, No. 01-02-00131-CR, at 3-4.  The court must
therefore determine whether this decision "was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the

-9-

United States." 28 U.S.C. § 2254(d)(1); <u>Martin</u>, 246 F.3d at 475
(explaining that "mixed questions of law and fact are reviewed
under § 2254(d)(1)").

The Supreme Court has held that a prisoner may waive his right
to trial within the IAD's time limits by agreeing, through his
counsel, to a trial date outside of the applicable time period.
<u>Hill</u>, 120 S. Ct. at 663-66. Felder attempts to distinguish his
case from <u>Hill</u> by pointing out that Hill's attorney agreed to a
trial date beyond the IAD's time limits "in open court, with
adequate cause shown and determine [sic] by the court," whereas his
attorney agreed to trial date resets outside of court and without
the approval of the trial court (Docket Entry No. 16 at 5). This
distinction is immaterial, however. The Court explained in <u>Hill</u>
that IAD's conditions for obtaining continuances applied
"primarily, if not indeed exclusively, to prosecution requests that
have not explicitly been agreed to by the defense." <u>Hill</u>, 120
S. Ct. at 665. Because the delays in Felder's trial were
"explicitly . . . agreed to by the defense" (<u>see</u> C.R. at 66, 67,
68, 83, 90), the IAD's requirements for a continuance, including
the condition that good cause be shown in open court, do not apply.
<u>Hill</u>, 120 S. Ct. at 665. Felder indicates that he was not in
agreement with his attorney on the issue of the trial date resets
(Docket Entry No. 3 at 19). But Felder's assent is not necessary.
With regard to agreeing to a delay in trial, "only counsel is in a

position to assess the benefit or detriment of the delay to the defendant's case." Hill, 120 S. Ct. at 664.  In light of Hill, the court does not conclude that the Court of Appeals' decision was contrary to, or involved an unreasonable application of, controlling Supreme Court precedent.  See 28 U.S.C. § 2254(d). Therefore, the court will deny relief on this claim.

    2.  Sixth Amendment

    Felder also asserts that repeated delays in his trial date violated his Sixth Amendment right to a speedy trial (Docket Entry No. 3 at 7; Docket Entry No. 3 at 13-25).[3]  The court evaluates Sixth Amendment speedy trial claims under the four-part balancing test announced by the Supreme Court in Barker v. Wingo, 92 S. Ct. 2182, 2192 (1972).  The length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant must be considered.  Id. at 2192.  All four factors are related and are to be considered together.  Id. at 2193.  If the

---

[3]The court notes that Felder did not raise this claim in his state habeas petition.  See Ex parte Felder, No. 62,381-01, at 6-8. Thus, he has not exhausted all remedies available in the state court system, and the court cannot grant relief on this claim.  See 28 U.S.C. § 2254(b)(1).  When a petition includes claims that have been exhausted along with claims that have not been exhausted, it is a "mixed" petition; and historically, federal courts presented with mixed petitions have dismissed the entire petition for failure to exhaust.  See Rose v. Lundy, 102 S. Ct. 1198, 1205 (1982); Galtieri v. Wainwright, 582 F.2d 348, 355 (5th Cir. 1978) (en banc).  Rather than dismiss Felder's petition as mixed, however, the court will exercise its discretion and consider the claim on the merits.  See 28 U.S.C. § 2254(b)(2).

-11-

first three factors weigh heavily in favor of the defendant, however, prejudice may be presumed, relieving the defendant of any burden to show actual prejudice.  United States v. Bergfeld, 280 F.3d 486, 488 (5th Cir. 2002) (citing Doggett v. United States, 112 S. Ct. 2686, 2693-94 (1992)).

The length of the delay is considered first, and unless the delay is long enough to be "presumptively prejudicial," the other factors need not be considered.  Id.  A delay of less than a year will rarely be considered presumptively prejudicial.  Cowart v. Hargett, 16 F.3d 642, 646 (5th Cir. 1994) (citing Doggett, 112 S. Ct. at 2691 n.1 (1992)).  A delay of twenty-two months, as occurred in this case, however, is sufficient to require the court to consider the other factors.[4]  See, e.g., Davis v. Puckett, 857 F.2d 1035, 1040 (5th Cir. 1988) (finding that a delay of 13 months made it "necessary to examine the remaining factors").

Next, the court considers the reason for the delay. "[D]ifferent weights should be assigned to different reasons" for delay.  Barker, 92 S. Ct. at 2192.  "If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice."

---

[4]"A defendant's speedy trial rights attach only when he is 'formally charged with a crime or actually restrained in connection with that crime.'"  Cowart v. Hargett, 16 F.3d 642, 645 (5th Cir. 1994) (quoting Dickerson v. Guste, 932 F.2d 1142, 1144 (5th Cir. 1991).  Felder was arrested for this crime on March 8, 2000. Ex parte Felder, No. 62,381-01, at 192.  His trial did not begin until January 3, 2002 (4 R.R. at 1).

United States v. Bergfeld, 280 F.3d 486, 489 (5th Cir. 2002).  On the other hand, if the state intentionally delayed its prosecution "to gain some impermissible advantage at trial," that fact weighs heavily against the state.  Doggett, 112 S.Ct. at 2693.  Negligence on the part of the state in bringing an accused to trial occupies the middle ground between diligent prosecution and bad-faith delay. Id.

In this case Felder was primarily responsible for the delay. Felder was arrested for this crime on March 8, 2000, and was indicted on April 4, 2000.  Ex parte Felder, No. 62,381-01, at 192. Felder was arrested in July of 2000 for being a convicted felon in possession of a firearm (Docket Entry No. 3 at 9).  He was subsequently taken into federal custody, pleaded guilty, and was sentenced to forty-eight months in federal prison (id.).  Felder's commission of a federal firearms offense and his subsequent conviction and imprisonment were the primary reasons for the delay, and this weighs heavily against him.  See Barker, 92 S. Ct. at 2191 (explaining that the defendant may be considered to have waived his right to speedy trial if the delay is attributable to him); Cowart, 16 F.3d at 647 ("Where . . . the delay is attributable to acts of the defendant, this factor is weighed in favor of the state.") (citing Barker, 92 S. Ct. at 2192).

Felder argues that he bears none of the responsibility for the delay, claiming that the state is to blame because it requested repeated delays (Docket Entry No. 3 at 23).  But as explained

-13-

above, Felder's attorney explicitly agreed to each of the resets (see C.R. at 66, 67, 68, 83, 90). Because Felder's counsel agreed to the resets, the court does not agree that fault lies with the state. See Davis, 857 F.2d at 1041 (finding that Davis could not complain about the first delay in his trial because he "willingly cooperated in the first delay").

Third, the court considers whether Felder asserted his speedy trial right. Felder contends that he asserted his speedy trial rights by signing a request for a speedy disposition on March 14, 2001, submitting a pro se motion for speedy disposition on March 29, 2001, and making two subsequent motions to dismiss for violation of the IAD (Docket Entry No. 3 at 24). A defendant's assertion of his speedy trial rights "is entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right." Barker, 92 S. Ct. at 2192-93. But the court must also consider that Felder's attorney agreed to multiple trial date resets. While Felder may have initially asserted his speedy trial rights through his actions in March of 2001, he later agreed to delays through his attorney (see C.R. at 66, 67, 68, 83, 90). "Scheduling matters are plainly among those for which agreement by counsel generally controls." Hill, 120 S. Ct. at 664. Therefore, although Felder did attempt to assert his speedy trial rights, his counsel's agreement to trial delay's severely mitigates the extent to which this factor weighs in his favor.

-14-

Because the first three factors do not weigh heavily in Felder's favor, the court will not presume that Felder was prejudiced by the delay, but will consider Felder's prejudice claims. See Bergfeld, 280 F.3d at 488.

The Supreme Court identified three specific interests that should be considered in evaluating prejudice: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the accused, and (iii) limiting the possibility that the defense will be impaired. Barker, 92 S. Ct. at 2193. Felder was already serving time in federal prison for another offense, so his pretrial incarceration was not oppressive, and actually lessens speedy trial concerns. See Russel v. Lynaugh, 892 F.2d 1205, 1216 (5th Cir. 1989). Felder does not claim that the delays caused him any additional anxiety and concern (Docket Entry No. 3 at 24-25). Felder claims only that the delay impaired his defense (id.). Specifically, Felder argues that the delay prevented him from calling as witnesses Officer Scott (a police officer who observed his arrest) and an acquaintance of Felder's (who Felder alleges may also have been present at the time of his arrest) (id.).

Felder's prejudice argument is not convincing. Felder's attorneys could have avoided prejudice by taking sworn statements from these witnesses soon after he was indicted. See Davis, 857 F.2d at 1041. Further, even if the delay did prevent Felder from locating witnesses, there is nothing in the record to support Felder's claim that these witnesses would have helped his case. In

-15-

fact, his last attorney, Robert Loper, stated in an affidavit in response to Felder's state habeas petition that he "did not think it was necessary or beneficial to seek out, interview, or subpoena Officer Scott because he did not have any involvement in the case . . . ." <u>Ex parte Felder</u>, No. 62,381-01, at 169. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his <u>pro se</u> petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983). Therefore, Felder has failed to show how he was prejudiced by the delay.

Considering the four <u>Barker</u> factors together, the court concludes that Felder's Sixth Amendment right to a speedy trial was not violated.

## B.    Inadmissible Expert Testimony

Felder asserts that the trial court improperly allowed unreliable expert testimony from Houston Police Crime Laboratory Technician K. K. Alexander (Docket Entry No. 1 at 7; Docket Entry No. 3 at 26). Respondent argues that Felder has not exhausted his state remedies for this claim and that the claim would now be procedurally barred under the Texas abuse of writ doctrine if Felder attempted to raise it in a subsequent state habeas petition (Docket Entry No. 15 at 6-7).

-16-

In order to properly exhaust state remedies a state prisoner must "fairly present" all of his claims to the state court. <u>Picard v. Connor</u>, 92 S. Ct. 509, 512 (1971). This means that a petitioner must have informed the state court of the same facts and legal theories upon which he bases his assertions in his federal habeas petition. <u>Dispensa v. Lynaugh</u>, 847 F.2d 211, 217-18 (5th Cir. 1988).

Felder contends that he did raise the claim regarding the inadmissibility of the state's expert testimony, referring the court to a portion of his memorandum in support of his state habeas petition (Docket Entry No. 16 at 5). The pages referred to by Felder, however, are part of his discussion of alleged <u>Brady</u> violations. <u>Ex parte Felder</u>, No. 62,381-01, at 59-63. <u>See</u> <u>Brady v. Maryland</u>, 83 S. Ct. 1194, 1196-97 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). While Felder did allege that information from the Houston Police Crime Laboratory is unreliable and that there had been many reported problems with scientific evidence from the laboratory, he did so in the context of his argument that the state failed to disclose such information upon request. <u>Ex parte Felder</u>, No. 62,381-01, at 59-63. Thus, even if Felder alleged the same or similar facts, it cannot be said that he

"informed the state court of the same . . . legal theories upon which he bases his assertions in his federal habeas petition. <u>Dispensa</u>, 847 F.2d at 217-18.  Accordingly, the court concludes that Felder did not exhaust this claim.

"[W]hen a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" the petitioner's claim is procedurally defaulted.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 1997) (quoting <u>Coleman v. Thompson</u>, 111 S. Ct. 2546, 2557 n.1 (1991)).  The Texas abuse of writ doctrine, codified in article 11.07 of the Texas Code of Criminal Procedure, prevents Texas courts from considering successive habeas petitions attacking the same sentence except in narrow circumstances.  Tex. Code Crim. Proc. Ann. art. 11.07 § 4 (Vernon 2005).  If Felder were to submit another state petition, the state courts could not consider it

> unless the application contains sufficient specific facts establishing that:
>
> (1)  the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2)  by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Id.   The abuse of writ doctrine represents an adequate and independent state procedural bar to federal habeas review.  Cotton v. Cockrell, 343 F.3d 746, 755 (5th Cir. 2003).

Felder does not claim that he could not have presented the claim that the expert testimony was inadmissible **because the factual or legal bases for the claims were unavailable.** Additionally, Felder does not attempt to demonstrate, and thus does not establish by a preponderance of the evidence, that but for a violation of the Constitution no rational juror could have found him guilty of the crime with which he was charged.  Therefore, the court concludes that if Felder were to submit a subsequent state habeas petition in an attempt to exhaust his state remedies, the Texas Court of Criminal Appeals would dismiss the petition as procedurally barred pursuant to article 11.07, section 4.  See Tex. Code Crim. Proc. Ann. art. 11.07 § 4; Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995).

Because Felder has procedurally defaulted this claim due to an independent and adequate state rule, the court cannot consider it on the merits unless he can establish cause and prejudice, or demonstrate that this court's failure to consider the claim constitutes a fundamental miscarriage of justice.  See Coleman, 111 S. Ct. at 2565.  Felder has not alleged, and thus has not proved, cause and prejudice.  He does assert that failure to consider this claim would constitute a fundamental miscarriage of justice (Docket Entry No. 16 at 7).  But the fundamental miscarriage of justice

exception is limited to claims of actual innocence.  See Sawyer v. Whitley, 112 S. Ct. 2514, 2518-19 (1992); Neville v. Dretke, 423 F.3d 474, 480 (5th Cir. 2005).  The court does not interpret Felder's petition to assert actual innocence.  But even if the court liberally construes Felder's petition to include a claim of actual innocence, he has not "establish[ed] that under the probative evidence he has a colorable claim of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986).  Therefore, the court concludes that Felder's claim regarding inadmissible expert testimony is procedurally barred.

## C.  Insufficient Evidence

Liberally construing Felder's petition, the court understands Felder to claim that the evidence of the aggregate weight and the chemical composition of the substance found in his possession was insufficient to support a conviction (Docket Entry No. 3 at 26).[5]

A federal court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt.  Herrera v. Collins, 113 S. Ct. 853, 861

---

[5]It does not appear that Felder raised this issue in his state habeas petition.  Therefore, the claim is likely unexhausted and procedurally defaulted.  See Nobles, 127 F.3d at 420.  Respondent, however, does not assert this theory with regard to this claim in his Motion for Summary Judgment (Docket Entry No. 15 at 5-7). "'[T]hough a court may invoke procedural default sua sponte, it should not do so lightly.'"  Prieto v. Quarterman, No. 05-70035, 2006 WL 1991613, at *5 (5th Cir. July 18, 2006) (quoting United States v. Willis, 273 F.3d 592, 597 (5th Cir. 2001), and holding that the district court abused its discretion in raising procedural default sua sponte) (publication pending).  Therefore, the court will address the claim on the merits.

(1993).  "[T]his inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."   Id. (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2789 (1979)) (emphasis in original) (internal quotation marks omitted).  Instead, the relevant question is whether, in viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt."  Dupuy v. Cain, 201 F.3d 582, 589 (5th Cir. 2000) (quoting Jackson, 99 S. Ct. at 2789) (internal quotation marks omitted).  In making that determination the court should not substitute its own view of the evidence for that of the fact-finder.  Whitmore v. Maggio, 742 F.2d 230, 232 (5th Cir. 1984).  The jury convicted Felder, and "all credibility determinations and reasonable inferences are to be resolved in favor of the jury's verdict."  United States v. Ruiz, 987 F.2d 243, 249 (5th Cir. 1993).  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 99 S. Ct. at 2792 n.16.

Felder was convicted of the first degree felony offense of possession of cocaine with intent to deliver pursuant to Texas Health and Safety Code § 481.112.[6]  The text of the statute, in relevant parts, reads:

---

[6]Cocaine is a controlled substance listed in Penalty Group I. Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2006).

> (a) Except as authorized by this chapter, a person
> commits an offense if the person knowingly
> manufactures, delivers, or possesses with intent to
> deliver a controlled substance listed in Penalty
> Group 1.
>
> . . .
>
> (d) An offense under Subsection (a) is a felony of the
> first degree if the amount of the controlled
> substance to which the offense applies is, by
> aggregate weight, including adulterants or
> dilutants, four grams or more but less than 200
> grams.

Tex. Health & Safety Code Ann. § 481.112(a) & (d) (Vernon 2003).

Felder alleges that the evidence of the weight and composition of the substance in his possession was insufficient.  With regard to these elements, the arresting officer testified that Felder was found to be in possession of a small box containing $800 cash and seven large chunks of what appeared to be crack cocaine (5 R.R. at 15-16).  He further testified that the chunks field-tested positive for cocaine (5 R.R. at 16-17).  The state also presented an expert witness who testified that the laboratory analysis of the chunks found in Felder's possession tested positive for cocaine and weighed, in aggregate, approximately 4.85 grams (5 R.R. at 53).

Considering this evidence in the light most favorable to the prosecution and resolving all credibility determinations in favor of the jury's verdict, the court concludes that a reasonable finder of fact could conclude that Felder was in possession of a controlled substance, namely cocaine, in an amount, "by aggregate weight, including adulterants or dilutants, four grams or more but

less than 200 grams." Tex. Health and Safety Code Ann. § 481.112(d). The court therefore concludes that the evidence was sufficient to support Felder's conviction.

**D.   Biased Juror**

Felder asserts that one of the jurors, John Oberprillar, was biased and should have been removed from the venire panel (Docket Entry No. 1 at 7; Docket Entry No. 3 at 29(a)-32). Felder contends that because Mr. Oberprillar was allowed to serve on the jury, his Sixth Amendment right to an impartial jury was violated (id.). Respondent argues that this claim is procedurally defaulted based on the state habeas court's finding that the claim was procedurally barred because Felder failed to challenge the venire panel at trial (Docket Entry No. 15 at 7). Felder argues that his claim is not procedurally barred because the state habeas court determined that he could not challenge the venire panel as a whole, not that he was barred from challenging juror Oberprillar specifically as he does now in his federal habeas petition (Docket Entry No. 16 at 7-8).

In Felder's state habeas application, he asserted that his "conviction was obtained by action of a . . . petit jury which was unconstitutionally selected and empaneled." Ex parte Felder, No. 62,381-01, at 8. In the section of his brief supporting this rather broad claim, he specifically raised the claim that Oberprillar should have been struck from the jury based on comments that he made in voir dire. Id. at 82-84. Thus, Felder's state habeas claim encompassed his claim regarding Oberprillar.

-23-

When a state court finds a claim procedurally barred based on an independent and adequate state law ground, a federal habeas court may not consider the claim.  <u>Sayre v. Anderson</u>, 238 F.3d 631, 634 (5th Cir. 2001) (citing <u>Coleman</u>, 111 S.Ct. at 2553-54; <u>Amos v. Scott</u>, 61 F.3d 333, 338-39 (5th Cir. 1995)).  The state court must clearly and expressly rely on the procedural rule as a ground for rejecting the petitioner's claim.  <u>Harris v. Reed</u>, 109 S. Ct. 1038, 1044-1045 (1989).  In this case the state habeas court expressly found that Felder's claim challenging the venire panel, which included his specific claim regarding Oberprillar, could not be considered because he did not challenge the panel at trial.[7] <u>Ex parte Felder</u>, No. 62,381-01, at 173.  Therefore, the court concludes that this express finding by the state habeas court bars this court from considering Felder's biased juror claim regarding Oberprillar.[8]  <u>See</u> <u>Harris</u>, 109 S. Ct. at 1044-1045; <u>Sayre</u>, 238 F.3d at 634.

## E.  Ineffective Assistance of Trial Counsel

Felder asserts that he was denied effective assistance of trial counsel because counsel (1) disclosed to the venire members

---

[7]The court notes that Felder did not attempt to strike Oberprillar, either for cause or using a peremptory challenge (4 R.R. at 99-102; C.R. at 92-97).

[8]As discussed above, Felder has failed to establish either cause and prejudice or fundamental miscarriage of justice, which are the two exceptions to the procedural default doctrine.

-24-

during voir dire that Felder had been previously convicted of other crimes, (2) failed to investigate the potential testimony of a second police officer who was present at the scene during Felder's arrest, (3) failed to request an independent examination of the substance found on Felder's person at the time of his arrest, and (4) agreed to trial date resets without informing him or obtaining his consent (Docket Entry No. 1 at 8; Docket Entry No. 3 at 34-42).

A defendant asserting ineffective assistance of counsel must prove that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). The first prong of the test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Under the second prong the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Wilkerson v. Collins, 950 F.2d 1054, 1064 (5th Cir. 1992). If the petitioner makes an insufficient showing on one prong of the test, the court need not address the other. Strickland, 104 S. Ct. at 2069.

The petitioner has the burden of proof on an ineffective assistance of counsel claim. Alexander v. McCotter, 775 F.2d 595, 601 (5th Cir. 1985). The petitioner must overcome a strong presumption that counsel "rendered adequate assistance and that the

-25-

challenged conduct was the product of reasoned trial strategy." Wilkerson, 950 F.2d at 1065 (citing Strickland, 104 S. Ct. at 2066).

### 1.   Disclosure of Previous Convictions

During voir dire, Felder's attorney told the panel of potential jurors, "If Mr. Felder, if he were to testify, you will learn that he has been convicted previously in his life.  If any of you feel like because you are now learning that . . . you couldn't give him a fair trial, I need to find out about that right now" (4 R.R. at 86-87).  Felder asserts that this statement by his attorney constituted ineffective assistance (Docket Entry No. 1 at 8; Docket Entry No. 3 at 35-36).  Respondent argues that counsel's decision to inform the venire panel of Felder's criminal history is a matter of trial strategy, which should not be second guessed (Docket Entry No. 15 at 9).

An attorney's "actions during voir dire are considered to be a matter of trial strategy." Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).  By revealing Felder's past convictions, counsel was seeking to identify jurors who could not be impartial.  Felder now asserts that was an unreasonable decision.  But in light of the highly deferential standard with which the court must review trial counsel's actions, the court cannot conclude that counsel's actions were anything other than the product of reasoned trial strategy.

-26-

2.  <u>Failure to Investigate Witnesses</u>

Felder alleges that another police officer, Officer Scott, was present at the scene of his arrest (Docket Entry No. 3 at 36-37). He contends that trial counsel provided ineffective assistance because he failed to investigate this potential eyewitness (Docket Entry No. 1 at 8; Docket Entry No. 3 at 36-39).

To proceed on a failure to investigate claim, Felder must specify what a proper investigation would have revealed and how it would have benefitted him.  See <u>United States v. Glinsey</u>, 209 F.3d 386, 393 (5th Cir. 2000) (citing <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989)).  Felder implies that the police officer who arrested him did not give truthful testimony regarding Felder's arrest and the subsequent search that yielded the controlled substance found in Felder's possession (Docket Entry No. 3 at 36-39).  He asserts that Officer Scott's testimony might have revealed improprieties in Felder's arrest and the subsequent search and seizure (<u>id.</u>).  However, "[w]here the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views claims of ineffective assistance with great caution." <u>Sayre</u>, 238 F.3d at 636; (quoting <u>Lockhart v. McCotter</u>, 782 F.2d 1275, 1282 (5th Cir. 1986)).  Felder's attorney swore in an affidavit in response to Felder's state habeas petition that he "did not think it was necessary or beneficial to seek out, interview, or subpoena Officer Scott because he did not have any involvement in the case

. . . ." Ex parte Felder, No. 62,381-01, at 169. Further, Felder has never produced an affidavit from Officer Scott to show what his testimony would have actually revealed. "[A] court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983). Accordingly, the court cannot find that counsel's performance was deficient or that Felder was prejudiced by counsel's failure to investigate Officer Scott as a potential witness.

3.   Failure to Independently Test the Seized Substance

Felder next alleges that trial counsel provided ineffective assistance because he did not seek to independently test the substance found in Felder's possession to verify or disprove the results of the police crime lab testing (Docket Entry No. 1 at 8; Docket Entry No. 3 at 40). Felder argues that counsel should have sought independent testing of the substance due to the "present day discoveries of the many inconsistencies of the Houston Police Crime Laboratory" (Docket Entry No. 3 at 40). Felder claims that the test results may have been unreliable as to both the composition and weight of the substance found in his possession (id.).

Felder raised this claim in his state habeas petition. Ex parte Felder, No. 62-381-01, at 113. The state court concluded that "[t]he totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance

-28-

of counsel." <u>Id.</u> at 173.  Although counsel has a duty to conduct a reasonable investigation, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 104 S. Ct. at 2066.  In light of this deferential view that courts must take regarding counsel's judgment, <u>see id.</u>, and the AEDPA's "highly deferential standard for evaluating state-court rulings," <u>Lindh</u>, 117 S. Ct. at 2066 n.7, the court cannot conclude that the state habeas court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Therefore, the court will deny relief on this claim.

   4.   <u>Agreement to Trial Date Resets without Consent</u>

   Finally, Felder asserts that trial counsel's assistance was ineffective because he agreed to multiple trial date resets without informing or obtaining consent from Felder (Docket Entry No. 1 at 8; Docket Entry No. 3 at 41-43).  Felder contends that counsel's agreement to postpone the trial date prevented him from effectively pursuing his rights under the IAD (Docket Entry No. 3 at 41-43).

   As the Supreme Court explained in <u>Hill</u>, "[s]cheduling matters are plainly matters among those for which agreement by counsel generally controls. . . .  Requiring express assent from the defendant himself for such routine and often repetitive scheduling

-29-

determinations would consume time to no apparent purpose." <u>Hill</u>, 120 S. Ct. at 664.  Accordingly, the court cannot find that counsel erred in not obtaining Felder's express consent for the trial date resets.

With regard to prejudice, although counsel's agreement to the trial date resets did result in Felder's waiver of the applicable IAD time limit, there is no way to know whether the state would have actually allowed the time limit to lapse had counsel not agreed to the resets.  Thus, any determination that Felder would have ever been entitled to relief under the IAD would be mere speculation.  Felder may have been more severely prejudiced if counsel had rushed to trial without adequate preparation.  "[O]nly counsel is in a position to assess whether the defendant would even be prepared to proceed any earlier." <u>Id.</u>  Therefore, the court cannot conclude that Felder was prejudiced by counsel's failure to obtain Felder's consent to the trial date resets and will deny relief on this ground.

**F.   Request for an Evidentiary Hearing**

Felder has requested that this court hold an evidentiary hearing (Docket Entry No. 16 at 2).  The AEDPA governs the granting of an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).  Felder is not entitled to an evidentiary hearing because he has "failed to develop a factual basis" of his claims in the state court proceedings.  <u>Id.</u>  Further, Felder's claims do not rely on a "new

-30-

rule of constitutional law made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2254(e)(2)(A)(i), or on a "factual predicate that could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Similarly, Felder has not shown clear and convincing evidence of a constitutional error. See 28 U.S.C. § 2254(e)(2)(B). Therefore, Felder's request for an evidentiary hearing will be denied.

## IV.  Certificate of Appealability

Although Felder has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA sua sponte. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). To obtain a COA for claims denied on the merits Felder must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004). To make such a showing Felder must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. Tennard, 124 S. Ct. at 2569. When the court denies relief based on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and that they

"would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1604 (2000).   For the reasons stated in this Memorandum Opinion and Order, Felder has not made a substantial showing of the denial of a constitutional right, nor has he shown that a jurist of reason would debate whether the procedural rulings in this case are correct.   Accordingly, a certificate of appealability will not issue in this case.

## V.   <u>Conclusion and Order</u>

The court **ORDERS** the following:

1.   Felder's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

2.   Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 15) is **GRANTED**.

3.   Felder's motion for an evidentiary hearing (Docket Entry No. 16 at 2) is **DENIED**.

4.   A certificate of appealability is **DENIED**.

5.   The Clerk will provide a copy of this Memorandum Opinion and Order to the petitioner and will provide a copy of the Petition and this Memorandum Opinion and Order to the respondent and the attorney general by providing one copy to the Attorney General of the State of Texas.

**SIGNED** at Houston, Texas, on this 15th day of August, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE